UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALBERT J. SABATULA,

                Plaintiff,

v.                                     Case No.  5:11-cv-368-Oc-37TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

_____

## ORDER

      Before the court is defendant State Farm Mutual Automobile Insurance

Company's Motion for a More Definite Statement, filed on July 14, 2011.  (Doc. 6.)   The

plaintiff filed a response memorandum to the defendant's motion on July 28, 2011.[1]

(Doc. 7.)  For the reasons below, the defendant's motion is DENIED.

### I.  FACTS AND BACKGROUND

      On or about September 8, 2008, the plaintiff purchased a policy of automobile

insurance from the defendant, which included $100,000.00 in uninsured/underinsured-

motorist ("UM") coverage for claims arising between September 8, 2008 and April 23,

2009.  (Am. Compl. ¶¶ 8-9.)  On February 5, 2009, the plaintiff was involved in an

automobile accident with an underinsured driver.  Subsequently, on August 28, 2009,

the plaintiff submitted a written claim for payment under the insurance policy to the

defendant.  (Id. ¶ 17.)  On September 18, 2009, the defendant partially denied the

_____

[1]The defendant subsequently filed a motion for leave to file a reply to the
plaintiff's response memorandum.  On September 9, 2011, this court issued an order
denying the defendant's motion.  (Doc. 18.)

plaintiff's claim and offered to pay a fraction of the policy benefit.  (Id. ¶ 21.)  On September 25, 2009, pursuant to Florida Statute § 624.155[2], the plaintiff filed a Civil Remedy Notice of Insured Violation to the office of Florida's Chief Financial Officer.  (Id. ¶ 23.)  Up to and including January 27, 2010, the defendant denied the plaintiff's claim for full payment under the policy.  On January 27, 2010, the plaintiff sued the defendant in state court for breach of the policy and for benefits due under the UM portion of the policy.  (Id. ¶ 26.)  During the pendency of the action, and after damages discovery was conducted, the defendant paid the plaintiff the $100,000.00 policy limit amount.  (Id. ¶ 28.)  The plaintiff then sought leave to amend to substitute a claim for first-party statutory bad faith, which was granted.  The case was removed to federal court.  In his June 23, 2011 Amended Complaint, the plaintiff asserts an action against the defendant for insurance bad faith pursuant to Florida Statute § 624.155.

The defendant has now filed the present motion asking the court to require the plaintiff to amend his pleading and provide a more definite statement.  Specifically, the defendant alleges that the plaintiff has made conflicting allegations regarding the determination of his damages and that, pursuant to Federal Rule of Civil Procedure

---

[2]Florida Statute § 624.155 provides in relevant part:

(1)     Any person may bring a civil action against an insurer when such person is damaged:

. . . .

(b)     By the commission of any of the following acts of the insurer:

1.     Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]

12(e), the defendant is entitled to a more definite statement from the plaintiff.  In its

motion, the defendant asserts that:

> Because of this internal inconsistency, it is unclear whether Plaintiff is
> claiming: (1) that there has been a final determination of bodily-injury
> damages, such damages being equal to the $100,000 policy limits; or (2)
> that Plaintiff's bodily-injury damages exceed $100,000 in an amount that
> has yet to be determined.  If the former, [the defendant] would answer the
> Amended Complaint.  If the latter, [the defendant] would move to dismiss
> the statutory bad-faith claim as premature because there has not yet been
> a final determination of the amount of damages.
>
> This internal inconsistency renders the Amended Complaint "so vague or
> ambiguous that [the defendant] cannot reasonably prepare a response."
> Fed. R. Civ. P. 12(e) (2011).  Different responses to the Amended
> Complaint would be warranted by the different possible clarifications of
> the ambiguity.

(Def.'s Mot. at 2-3.)

In response, the plaintiff contends that the defendant's motion should be denied

because the plaintiff's Amended Complaint is not so vague or ambiguous that the

defendant cannot reasonably prepare a response.  Specifically, the plaintiff asserts that

its Amended Complaint (1) clearly makes a claim for statutory bad faith against the

defendant, and (2) based on existing law, such a statutory bad faith claim against the

defendant is ripe for litigation.

## II.  ANALYSIS

A.    Ripeness of Statutory Bad Faith Claim

Under Florida law, a statutory bad faith claim is ripe for litigation when a plaintiff

shows (1) the existence of liability of the UM insurer, and (2) that there has been a

determination of liability and extent of damages owed on the first-party insurance

contract.  Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla.

3

1991).  In <u>Blanchard</u>, the Florida Supreme Court stated that:

> If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim.  Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.  It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits.  Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.

<u>Id.</u> at 1291; <u>see also</u> <u>Amerisure Ins. Co. v. Albanese Popkin The Oaks Dev. Group,</u>

<u>L.P.</u>, No. 09-81213-CIV, 2010 WL 1856263, at *2 (S.D. Fla. May 10, 2010) (quoting

<u>Blanchard</u>); <u>Porcelli v. OneBeacon Ins. Co., Inc.</u>, 635 F. Supp. 2d 1312, 1316 (M.D. Fla.

2008) (same).  The Florida Supreme Court more recently clarified the <u>Blanchard</u> court's

holding in <u>Vest v. Travelers Ins. Co.</u>, 753 So. 2d 1270 (Fla. 2000).  In <u>Vest</u>, the Florida

Supreme Court stated that, "[w]e continue to hold in accord with <u>Blanchard</u> that bringing

a cause of action in court for violation of section 625.155(1)(b)1 [sic] is premature until

there is a determination of liability and extent of damages owed on the first-party

insurance contract."  <u>Id.</u> at 1276.  Further, the court noted that <u>Blanchard</u> "is properly

read to mean that the determination of the existence of liability on the part of the

uninsured tortfeasor and the extent of the insured's damages are elements of a cause

of action for bad faith."  <u>Id.</u> at 1275 (internal quotation marks omitted); <u>see also</u>

<u>Amerisure</u>, 2010 WL 1856263, at *2 (citing <u>Vest</u>).  Moreover, "[o]nce those elements

exist, there is no impediment as a matter of law to a recovery of damages [under

section 624.155], dating from the date of a proven violation."  <u>Id.</u>; <u>see also</u> <u>Morales v.</u>

Zenith Ins. Co., No. 8:10-cv-00733-T-30TGW, 2010 WL 2293199, at *2 (M.D. Fla. June 8, 2010) (". . . once the existence of liability on the part of the uninsured tortfeasor and the extent of the insured's damages are determined, there is no impediment to recovery of [bad faith] damages dating from the date of the proven violation.").

The facts of Vest and other notable cases are similar to the facts in the present case.  In Vest, the UM insurer settled with the insured by paying the full amount of the policy limit to the insured during the course of the insured's litigation against the insurer. Subsequently, the trial court dismissed the insured's bad faith action based on its interpretation of Blanchard and Imhof v. Nationwide Mut. Ins. Co., 643 So. 2d 617 (Fla. 1991).  The trial court reasoned that Blanchard and Imhof required that a bad faith damages action is not ripe until there is an establishment of "the extent of damages suffered by a plaintiff as a result of the [UM] tortfeasor's negligence."  On appeal, the Supreme Court rejected the trial court's reasoning and held that "the payment of the policy limits by [an] insurer is the functional equivalent of an allegation that there has been a determination of the insured's damages" for purposes of satisfying the requirement that there be a determination of liability and extent of damages owed on the first-party insurance contract.  Vest, 753 So. 2d at 1273-74.  In support of its conclusion, the Vest court relied on the Florida Court of Appeals decision in Brookins v. Goodson, 640 So. 2d 140 (Fla. 4th DCA 1994):

> This Court's decisions in Blanchard and Imhof were followed by the Fourth District's decision in [Brookins].  In Brookins the issue was whether a settlement constituted the "determination of damages" required by Blanchard and Imhof.  The Fourth District stated:
>
> > The supreme court has recently held that to state a cause of action for first party bad faith there must be an

5

allegation that there has been a determination of the insured's damages.  The court did not, however, require that the damages be determined by litigation, that there be an allegation of a specific amount of damages or that the damages be in excess of the policy limits.  The court was not faced with the circumstance presented here where the policy limits are subsequently tendered by the insurer.  The insured in Imhof received an award of damages through arbitration of an amount less than the policy limits.  The amount or extent of damages was held not to be determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "Imhof had a valid claim."

We hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages.  It satisfied the purpose for the allegation-to show that the insured had a valid claim.

. . . .

Neither in Blanchard nor more recently in Imhof does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration . . . However, as noted in Blanchard, a resolution of some kind in favor of the insured is a prerequisite.  There was a favorable resolution here.

Id. (quoting Brookins, 640 So. 2d at 112-13) (internal citations omitted).

As in Vest, the facts in Brookins are also similar to the present case.  In Brookins, the defendant State Farm Mutual Automobile Insurance Company argued that an excess judgment (e.g., in excess of the policy limit) is a prerequisite to a statutory bad faith cause of action under Florida Statute § 624.155.  The Brookins court disagreed with State Farm's argument, and noted that, "[b]y settling for the policy limits, the insurer has in effect conceded that the insured had a valid claim and the insured's damages have a minimum value set at the amount of the policy limits.  The settlement

6

resolves the underlying litigation for contractual uninsured motorist benefits.  It does not

foreclose the bad faith claim."  Brookins, 640 So. 2d at 114 (emphasis added).  The

plaintiff correctly notes in his response memorandum that the Middle District of Florida

has also stated that an insurer's payment of its policy limits satisfies the "determination

of damages" prerequisite to pursuing a bad faith statutory damages claim.  See, e.g.,

Hamilton v. Allstate Indem. Co., No. 8:05-CV-992-T17-MAP, 2005 WL 2465021, at *2

(M.D. Fla. Oct. 6, 2005) (stating that an insurer's payment of the policy limit to the

insured "serves as the 'functional equivalent' of a determination of the insured's

damages") (quoting Allstate v. Clohessy, 32 F. Supp. 2d 1328, 1322 (M.D. Fla. 1998)).

        In an attempt to distinguish the present case from the above cited cases, the

defendant relies on Geico Gen. Ins. Co. v. Hoy, 927 So. 2d 122 (Fla. 2d DCA 2006) and

State Farm Mut. Auto Ins. Co. v. O'Hearn, 975 So. 2d 633, 635 (Fla. 2d DCA 2008).

These cases are factually distinguishable from the present case.  In Hoy, a UM insurer

paid the full policy amount to the plaintiff.  The plaintiff subsequently sued for breach of

contract and negligent and fraudulent claims handling (which the court characterized as

akin to bad-faith claims).  The plaintiff also sought discovery of the claims file.  The

court characterized the claims file as work product and held that the claims file was not

discoverable until the conclusion of the underlying claim for contract benefits.  The court

stated that the fact that the plaintiff was seeking "additional benefits" under the policy

meant that the breach of contract claim had not concluded and the claims file was

therefore not discoverable.  Thus, although the court found that the plaintiff's bad faith

claim was not ripe even though the defendant paid the full policy amount to the plaintiff,

the plaintiff in Hoy was also seeking additional benefits under the policy.  Hoy, 977 So.

7

2d at 123-26.  In the present case, the plaintiff is not seeking additional benefits under the policy, but rather is seeking damages pursuant to Florida statute.  In O'Hearn, the court held that "[a]n allegation that an insurer has paid a portion, but not all, of the damages that it allegedly owes does not constitute a legally sufficient allegation that the amount of damages has been finally determined."  O'Hearn, 975 So. 2d at 635.  In O'Hearn, the defendant offered to settle the plaintiff's insurance claim by paying her a $5,000.00 portion of the policy limit.  The plaintiff rejected the settlement offer, and thus the determination of damages was still under dispute.  In the present case, unlike in O'Hearn, the defendant paid the full $100,000.00 policy amount to the plaintiff and thus the damages under the first-party insurance contract are not still under dispute.  Thus, the cases cited by the defendant are not wholly applicable to the present case.

The defendant objects to the plaintiff's allegations contained in the plaintiff's Amended Complaint because the plaintiff alleges that there has been a "determination of damages" while also seeking extra (e.g., bad faith) damages against the defendant.  As discussed, the "determination of damages" requirement to bring a statutory bad faith claim is merely a prerequisite to seeking damages for the insurer's bad faith, not a bar against seeking extra contractual damages.  The "determination of damages" relates only to the damages on the underlying insurance contract.  Contrary to the defendant's assertion, the plaintiff's statutory bad faith claim is ripe because there has been a determination of liability and extent of damages on the insurance contract.

Based on the applicable law and facts of the present case, the court finds that the plaintiff's bad faith claim against the defendant complies with existing law.  As in cases such as Vest and Brookins, the defendant in the present case paid the plaintiff

the full policy amount.  By settling for this amount, the defendant conceded that the plaintiff had a valid claim on the first-party insurance contract and that the plaintiff's damages have a minimum value set at the amount of the policy limits.  The payment of the full policy amount serves as the "functional equivalent" of a determination of liability and the extent of damages owed on the first-party insurance contract.  Thus, because the plaintiff has shown (1) the existence of liability of the UM insurer (the defendant), and (2) that there has been a determination of liability and extent of damages owed on the first-party insurance contract, the plaintiff's statutory bad faith claim is ripe for review.  See, e.g., Blanchard, 575 So. 2d at 1291; Vest, 753 So. 2d at 1273-74.

 B.    Federal Rule of Civil Procedure 12(e)

       Federal Rule of Civil Procedure 12(e) provides in relevant part that, "[a] party may move for a more definitive statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e); see also Woolington v. 1st Orlando Real Estate Servs., Inc., No. 6-11-cv-1107-Orl-31GJK, 2011 WL 3919715, at *3 (M.D. Fla. Sept. 7, 2011) (stating Rule 12(e) standard).  A motion for a more definite statement "must point out the defects complained of and the details desired."  Id.

       In the present case, the court finds that the plaintiff's Amended Complaint is not so vague or ambiguous that the defendant cannot reasonably prepare a response.  In support of its conclusions, the court highlights the following portions of the plaintiff's June 23, 2011 Amended Complaint.  First, the Amended Complaint clearly states that the plaintiff submitted a UM insurance claim to the defendant and that his claim exceeded the combined limits of the underinsured tortfeasor and the UM insurance

9

policy:

> 17.     On August 28, 2009, the Plaintiff submitted his written claim for payment under the policy to Defendant, STATE FARM, therein outlining his claim and demonstrating his entitlement to payment under the policy.
>
> . . . .
>
> 19.     As outlined in his claim of August 28, 2009, the Plaintiff's claim exceeded the bodily injury liability insurance limits of Amanda Bryant [the underinsured], and also exceeded the limits of insurance coverage provided to the Plaintiff under the policy for uninsured/underinsured motorist coverage by STATE FARM.

(Am. Compl. ¶¶ 17, 19.)

Next, the Amended Complaint clearly alleges that the defendant denied the

plaintiff's claim, after which time the plaintiff took legal action.  Subsequently, the

defendant paid the $100,000.00 policy limit amount to the plaintiff:

> 20.     In his claim of August 28, 2009, the Plaintiff requested STATE FARM pay the benefits provided under the policy by September 18, 2009.
>
> 21.     In response, on September 18, 2009, STATE FARM denied the Plaintiff's claim, offering to pay only a fraction of the policy benefit.
>
> . . . .
>
> 23.     Pursuant to § 624.155, Florida Statutes, the Plaintiff filed a Civil Remedy Notice of Insurer Violation (hereinafter referred to as "CRN") with the Chief Financial Officer, Department of Financial Services of the State of Florida on September 25, 2009.  (A copy of the CRN is attached hereto as Exhibit B and incorporated herein.)
>
> . . . .
>
> 26.     Up to and including January 27, 2010, the Defendant continued to deny the Plaintiff's claim for payment under the policy, at which time, the Plaintiff filed his action for breach of the policy and for benefits due under the uninsured motorist portion of the policy.
>
> . . . .

28.     On or about October 28, 2010, STATE FARM finally tendered
payment of the monies due to the Plaintiff under the policy, which had
been requested by the Plaintiff in his claim of August 28, 2010.

(Id. ¶¶ 20-21, 23, 26, 28.)

The Amended Complaint makes clear that the plaintiff's claim is one for statutory

bad faith and for damages in excess of the policy of UM coverage based on the

defendant's alleged bad faith conduct:

32.     This is an action against STATE FARM for Insurance Bad Faith
pursuant to § 624.155, Florida Statutes.

. . . .

64.     Based upon STATE FARM's bad faith conduct, Plaintiff is entitled
to recover from STATE FARM, the total amount of all damages, including
amounts in excess of policy limits, interest, reasonable attorney's fees and
costs, and any damages caused by the violation of law, pursuant to Fla.
Stat. §627.727 (10)[3] and State Farm Mutual Automobile Insurance
Company v. Laforet, 658 So.2d 55 (Fla. 1995).

(Id. ¶¶ 32, 64.)

The Amended Complaint also clearly alleges that the bad faith claim is ripe for

litigation based on applicable law:

59.     The tender of policy limits constitutes a determination damages

---

[3]Florida Statute § 627.727(10) provides:

627.727     Motor vehicle insurance; uninsured and underinsured
vehicle coverage; insolvent insurer protection.-

(10)    The damages recoverable from an uninsured motorist carrier
in an action brought under s. 625.155 shall include the total amount of the
claimant's damages, including the amount in excess of the policy limits,
any interest on unpaid benefits, reasonable attorney's fees and costs, and
any damages caused by a violation of a law in this state.  The total
amount of the claimant's damages is recoverable whether caused by an
insurer or by a third-party tortfeasor.

11

[sic] making this matter ripe for bad faith litigation.  <u>Vest v. Travelers</u>, 753 So. 2d 1270 (Fla. 2000); <u>Brookins v. Goodson</u>, 640 So. 2d 100 (Fla. 4th DCA 1994).

(<u>Id.</u> ¶ 59.)

The court finds that the plaintiff's allegations contained in the plaintiff's Amended Complaint are not so vague or ambiguous as to require a more definite statement from the plaintiff.  The Amended Complaint clearly alleges the necessary facts and law to show that the plaintiff is bringing a bad faith claim.  Based on the applicable law, the plaintiff's bad faith claim is ripe for review.

## III.  CONCLUSION

For the reasons above, the defendant's Motion for a More Definite Statement is DENIED.

IT IS SO ORDERED.

DONE and ORDERED in Ocala, Florida on the 15th day of September, 2011.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to: Counsel of Record

12